**SO ORDERED.**

**SIGNED July 29, 2022.**



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

---

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE DIVISION

| | |
|---|---|
| In re:<br>German Pellets Louisiana, LLC and<br>Louisiana Pellets, Inc.<br><div align="center">*Debtors*</div> | Case No. 16-80162<br><br>Chapter 11 |
| Craig Jalbert, in his capacity as<br>Chapter 11 Liquidating Trustee for<br>German Pellets Louisiana, LLC and<br>Louisiana Pellets, Inc.<br><div align="center">*Plaintiff*</div><br>v.<br><br>Raymond James & Associates, Inc,<br>George Longo, and Danyal Sattar<br><div align="center">*Defendants*</div> | Judge John W. Kolwe<br><br>Adv. Proc. No. 21-5014 |

### RULING ON COMPETING MOTIONS

Before the Court are competing Motions for Summary Judgment filed by the Plaintiff, Craig Jalbert, in his capacity as Chapter 11 Liquidating Trustee for German Pellets Louisiana, LLC and Louisiana Pellets, Inc. (the "Liquidating Trustee") (ECF #26) and by Defendants Raymond James & Associates, Inc. ("Raymond James"), George Longo, and Danyal Sattar (ECF #44), as well as the Defendants' Motion for

Relief from Confirmation Order (ECF #45). The fundamental question is whether the Defendants, who were well aware of the bankruptcy case of Debtor Louisiana Pellets, Inc. ("Louisiana Pellets") but opted not to participate in it, are barred from asserting rights of setoff, compensation, recoupment, or similar claims arising out of an indemnity agreement with Louisiana Pellets as affirmative defenses in pending state court litigation between the parties, given that the confirmed Debtor's Joint Chapter 11 Plan of Liquidation (the "Plan") expressly discharges these kinds of claims. In the alternative, Raymond James seeks relief from the Plan and Confirmation Order under Fed. R. Civ. P. 60(b). For the reasons set forth below, the Court concludes that the Defendants are bound by the Plan, the Defendants are not entitled to relief under Rule 60(b), the plain language of the Plan discharges the claims asserted by the Defendants here even when asserted in a defensive posture, and at any rate, even if the Plan did not bar those claims, the Defendants could not assert them as affirmative defenses against the Liquidating Trustee because neither the Debtors nor the Debtors' claims are at issue. Accordingly, the Court will grant the Liquidating Trustee's Motion and deny the Defendants' Motions.

## Summary Judgment Standard

The Motions for Summary Judgment are subject to the usual Fed. R. Civ. P. 56 summary judgment standard, made applicable to adversary proceedings by Fed. R. Bankr. P. 7056. Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Here, the relevant facts are undisputed, and the Court's task is simply to determine the applicable law and apply it to the undisputed facts. Unless otherwise noted, the Court takes these facts from the Liquidating Trustee's Statement of Uncontested Facts (ECF #26-13), the Defendants' Responses to that Statement (ECF #43-1), the Defendants' Statement in support of their own Motion for Summary Judgment (ECF #44-1), the Liquidating Trustee's Response with a Further Statement of Facts (ECF #48), and the Defendants' Response to that Further Statement (ECF #50).

The Defendants' Motion for Relief from the Confirmation Order under Fed. R. Civ. P. 60(b) is discretionary, as the Defendants acknowledge.[1] *See* 11 Fed. Prac. & Proc. Civ. § 2857 (3d ed.); *In re 401 E. 89th St. Owners, Inc.*, 223 B.R. 75, 82 (Bankr. S.D.N.Y. 1998); Fed. R. Bankr. P. 9024; 11 U.S.C. § 105(a).

## Factual Background

This case arises out of the bankruptcy of the Debtors, German Pellets Louisiana, LLC ("GPLA") and Louisiana Pellets, Inc. ("Louisiana Pellets"). Louisiana Pellets owned a wood pellet manufacturing facility located in Urania, Louisiana, and GPLA was the construction manager and operator of the facility. The construction costs and related expenses were financed through the sale of a series of bonds issued by the Louisiana Public Facility Authority ("LPFA"). Raymond James was the initial purchaser of all of the bonds and immediately resold the bonds to qualified investors ("Bondholders"). (It was also the project advisor to at least Louisiana Pellets.) In connection with each of the bond series, the LPFA, Louisiana Pellets, and Raymond James entered into Bond Purchase Agreements under which, among other provisions, Louisiana Pellets agreed to indemnify the Defendants for any "Loss" resulting from "any untrue statement or misleading statement of material fact contained in the Limited Offering Memorandum." This indemnity agreement is the source of Raymond James' claims in this case.

The Debtors eventually ran into financial problems, and on February 16, 2016 (the "Petition Date"), each of them filed a Petition for Relief under Chapter 11 in this Court. No trustee or examiner was appointed, and although the cases were consolidated for administrative purposes, they were never substantively consolidated. On September 8, 2017, the Court conducted a hearing on confirmation of the Plan, and it entered the Confirmation Order the same day.[2]

---

[1] *See* Defendants' Combined Memorandum in Support of Their Motions for Summary Judgment and Relief from the Confirmation Order ("Combined Memorandum"), p. 16 (ECF #46).

[2] In the main bankruptcy case, the Confirmation Order is ECF #755, and the Plan is ECF #755-1.

3

Pursuant to the Confirmation order, the Liquidating Trust was established subject to the Liquidating Trust Agreement, and Craig Jalbert was appointed as the Liquidating Trustee. The Confirmation Order expressly recognized the Liquidating Trust as having "a separate existence from the Debtors." Under the Plan, certain assets of the Debtors were transferred to the Liquidating Trust, including all of their legal claims, demands, and causes of action. Under the Plan, the Liquidating Trust did not assume any debts of either Debtor, all creditors were granted a beneficiary interest in the Liquidating Trust, and no creditor of either Debtor is also a creditor of the Liquidating Trust.[3]

Section 9.21 of the Plan provides, in relevant part:

> The rights afforded in the Plan and the treatment of all Claims and Interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all Claims and Interests of any nature, whatsoever, including, any interest accrued on such claims from and after the Petition Date against the Debtors, the Reorganized Debtors, or any of their assets or properties. Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date: (i) the Debtors and Reorganized Debtors shall be deemed discharged and released to the fullest extent permitted by section 1141 of the Bankruptcy Code from all Claims and Interests, including Claims and Interests that arose before the Effective Date and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code whether or not: (a) a proof of claim or proof of interest based on such debt or interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code. . . and (ii) all persons, entities, and holders of Claims or Interests shall be precluded from asserting against the Debtors, the Reorganized Debtors, the Purchaser, their successors, or their respective assets or properties any other or future claims or interests based upon any act or omission, transaction, or other activity of any kind or nature relating

---

[3] The Defendants responded to this provision noting that "[e]ven if the cited language has the legal effect proposed by Jalbert, the Defendants are entitled to relief under Rule 60(b) from it." *See* Defendants' Responses to Plaintiff's Statement of Uncontested Facts, p. 2 (ECF #43-1). However, the Defendants cannot genuinely dispute the language of the Plan and Confirmation Order.

to the Debtors or the Reorganized Debtors that occurred before the Effective Date. . . .

**Except as otherwise provided in the Plan and Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code on and after the Effective Date, all persons who have held, currently hold or may hold a debt, Claim or Interest are permanently enjoined from taking any of the following actions on account of any such discharge of debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtors, the Reorganized Debtors, their successors, heirs, executors, administrators, or assigns or their respective properties . . . (4) asserting any setoff, right of subrogation, surcharge, or recoupment of any kind against any obligation due the Debtors, the Reorganized Debtors, the Purchaser, their successors, heirs, executors, administrators, or assigns or their respective properties . . . . Any person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.**

*See* Plan (ECF #755-1 in the main bankruptcy case) (emphasis in original). The Confirmation Order contains similar language. *See* Confirmation Order, ¶ 26 (ECF #755 in the main bankruptcy case).

It is undisputed that the Defendants had actual knowledge of the Debtors' bankruptcy filings from the very beginning of the case and even communicated with Debtors' counsel during the case. The Defendants even acknowledge in their briefing that they "monitored the docket in the Main Case."[4] The Defendants never filed a Proof of Claim or otherwise formally participated in the bankruptcy case, and the Debtors did not list the Defendants as creditors. The parties agree that any indemnity

---

[4] *See* Defendants' Combined Memorandum, p. 6 (ECF #46).

claims held by the Defendants arose pre-petition, and that the claims held by the Bondholders against the Defendants arose post-petition.

On February 16, 2018, the Liquidating Trustee filed a suit in Louisiana state court (the "State Court Action") against former officers and directors of the Debtors and their errors and omissions insurer, alleging, among other things, breach of fiduciary duty.[5] In April 2019, certain Bondholders assigned to the Liquidating Trustee any and all claims, demands, and causes of action that they may have against the Defendants. On June 19, 2019, the Liquidating Trustee amended the Petition in the State Court Action to name the Defendants as parties, asserting against them causes of action for violation of Louisiana's Blue Sky Law and Florida's Security Act, both assigned by the Bondholders.

The State Court Action was removed and remanded twice, once before the Defendants were added and once after. Following the second remand, the Defendants filed an Answer and Affirmative Defenses and Reconventional Demand on September 17, 2021. The reconventional demand was based on the indemnity clause found in each of the Bond Purchase Agreements discussed above, in which the Debtors agreed to indemnify the Defendants for any "Loss" for "any untrue statement or misleading statement of material fact contained in the Limited Offering Memorandum . . . ." Specifically, the Defendants alleged they "are entitled to Compensation under La.C.C. art. 1893, recoupment and setoff against the claims Plaintiff [the Liquidating Trustee] is making against the Raymond James Defendants in this lawsuit in the full amounts claimed by Plaintiff."[6]

On November 3, 2021, the Liquidating Trustee commenced this Adversary Proceeding by filing his Complaint for Declaratory Judgment and Damages (ECF #1)

---

[5] The state court action is *Craig Jalbert, in his capacity as the Chapter 11 Liquidating Trustee for German Pellets Louisiana, LLC and Louisiana Pellets, Inc. v. Peter Leibold, Anna Kathrin Leibold, Michael Leibold, Meranda Hyman, German Pellets Holding USA, Inc., and Continentale Sachversicherung AG*, Civil Action No. 480802 (28th Judicial District Court for the Parish of LaSalle, State of Louisiana).

[6] *See* Defendants' Answer and Affirmative Defenses, Exhibit 3 to the Complaint in this Adversary Proceeding (ECF #1-3).

seeking a declaratory judgment holding that the Defendants may not assert their claims for compensation, recoupment, setoff, or similar doctrines in the State Court Action, as well as an award of damages and attorney's fees. The Defendants filed an Answer and Counterclaim (ECF #18) seeking a declaratory judgment that the Defendants may assert their claims in the State Court Action, as well as relief from the Confirmation Order under Fed. R. Civ. P. 60(b). Thereafter the parties filed these competing motions, seeking resolution of the entire case based on the undisputed facts.

## **The Arguments**

In his Motion for Summary Judgment, the Liquidating Trustee argues that the Defendants were well aware of the bankruptcy case and are bound by the terms of the Plan and Confirmation Order, which discharged the types of pre-petition claims the Defendants are now asserting. The Liquidating Trustee also argues that even if the Defendants' indemnity claims of setoff and recoupment were not discharged in the Plan, they could not succeed anyway, either based on the merits or because the Defendants failed to file a Proof of Claim in the bankruptcy case. Finally, the Liquidating Trustee argues that the Defendants' counterclaim violates the Debtors' discharge under the Bankruptcy Code, the Plan, and the Confirmation Order, and the Defendants are not permitted to modify the consummated and confirmed Plan under Fed. R. Civ. P. 60(b).

In their Motions, the Defendants acknowledge that they had actual notice of the bankruptcy case but argue that they did not have the requisite "notice of an initiating claim activating their indemnity rights of recoupment and setoff,"[7] specifically knowledge that the Bondholders would assign their claims against the Defendants to the Liquidating Trustee, so there was no need to participate in the bankruptcy. The Defendants argue that in any event, there was no need to file a Proof of Claim because they are only asserting setoff and recoupment in a defensive posture

---

[7] Defendants' Combined Memorandum, p. 5 (ECF #46).

and are not seeking recovery from the Debtors' bankruptcy estates. The Defendants also assert that, notwithstanding clear language in the Plan to the contrary, the Liquidating Trustee is actually the Debtors' successor-in-interest, and that as a result, when the Liquidating Trustee acquired the Bondholders' claims, those claims became claims of the Debtors and their bankruptcy estates. Based on that assertion, the Defendants claim they are entitled to assert their indemnity claims of setoff or recoupment against the Liquidating Trustee just as they could against the Debtors (assuming those claims were not discharged by the Plan and Confirmation Order). Finally, the Defendants argue that they are entitled to relief from the Confirmation Order under Rule 60(b) on the theories of deficient notice and principles of equity.

As noted, the relevant facts are not in dispute, and this is a purely legal dispute susceptible to summary judgment. The parties address a number of issues, and the Defendants would have to prevail on all or virtually all of them to prevail. For the Defendants to be able to assert their claims, they must prove that they are not bound by the Plan and Confirmation Order, either because they were not required to participate in the bankruptcy case or because they are entitled to relief from the Confirmation Order under Rule 60(b), and that the claims were not discharged in the Plan and Confirmation Order. Only if the Defendants prevailed on all of those issues could the Court reach the issues of whether they can assert those claims against the Liquidating Trustee and whether the claims are substantively and procedurally viable. Because the Court concludes that the Defendants are bound by the Plan and Confirmation Order, the Defendants' claims under the indemnity agreement were discharged and enjoined from assertion by the plain language of the Plan, and even if they had not been, the Defendants could not assert them here because the claims do not emanate from the Debtor (they are the Bondholders' claims), and the Liquidating Trustee is not the Debtor.

## <u>Analysis</u>

Because the confirmed Plan contains language that seems to bar the types of claims the Defendants are asserting here (as discussed below), the Court must begin

its analysis by determining whether the Defendants are even bound by the Plan, given that they had actual notice of the bankruptcy case. If they are bound by the Plan, the next question is whether they may be entitled to relief from the Confirmation Order under Rule 60(b), which would exempt their claims from the discharge. If they are bound by the Plan and cannot get relief from the Confirmation Order, the next (and potentially dispositive) question is whether their claims were actually discharged by the Plan and Confirmation Order. Finally, the Court will address the Defendants' argument that they may assert their claims in a defensive posture notwithstanding the Plan language.

### *The Defendants are bound by the Plan because they had actual notice of the bankruptcy case.*

As a threshold matter, the Court must determine whether the Defendants are bound by the terms of the Plan given their admission that they had actual knowledge of the bankruptcy proceeding but failed to participate in the case. The Defendants concede that under Fifth Circuit law, "[u]nder normal circumstances, actual notice of a bankruptcy burdens a creditor to come forward with his claim." *See* Defendants' Combined Memorandum, p. 10 (ECF #46) (citing *Matter of Christopher*, 28 F.3d 512, 517 (5th Cir. 1994); *Matter of Sam*, 894 F.2d 778, 781 (5th Cir. 1990) ("Our construction of the rule and the statutes in *Neeley [v. Murchison*, 815 F.2d 345 (5th Cir. 1987)] simply recognized that the purpose of the notice requirement is satisfied when the creditor has actual knowledge of the case in time to permit him to take steps to protect his rights")).

That is indeed the law in the Fifth Circuit. In *Christopher*, the court's focus on actual notice centered on § 523(a)(3) of the Bankruptcy Code, which remains the same to this day:

> Under § 1141(d)(2), confirmation of a plan of reorganization does not discharge an individual debtor from any debt excepted from discharge under § 523 of the Code. The provision of § 523 that has been the focus of all attention in the instant case is § 523(a)(3), which excepts from the discharge of an individual debtor any debt

9

(3) neither listed nor scheduled under section 521(1) of this title, with the name, if known to the debtor, of the creditor to whom such debt is owed, in time to permit—

> (A) if such debt is not of a kind specified in paragraph (2) [false pretenses, false representation, or actual fraud, etc.], (4) [fraud or defalcation while acting in a fiduciary capacity, etc.] or (6) [willful or malicious injury] of this subsection, timely filing of a proof of claim, unless such creditor had notice or actual knowledge of the case in time for such timely filing; or

> (B) if such debt is of a kind specified in paragraph (2), (4) or (6) of this subsection, timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

The bankruptcy court relied on § 523(a)(3) in concluding that the Sequa Group's claims were discharged despite the Group's omission from the schedule of creditors because the Group had actual knowledge of Christopher's bankruptcy.

*Christopher*, 28 F.3d at 515. The key point of the statute is that a debtor has the obligation to list and schedule a creditor, and failure to do so will mean that those claims will be exempt from discharge "*unless such creditor had notice or actual knowledge of the case in time for such timely filing.*" § 523(a)(3)(a) & (b). The statute itself provides that creditors with actual, timely notice of the bankruptcy proceeding will have their claims discharged if they fail to participate in the bankruptcy process. In *Christopher*, the Fifth Circuit held that a creditor's claims were discharged because they had actual knowledge of the bankruptcy.

Notwithstanding this binding statutory and case law from the Fifth Circuit, the Defendants argue that their actual notice of the bankruptcy proceeding is

10

irrelevant here because of the contingent and unliquidated nature of their indemnity rights. The Defendants argue that the "Debtors should have given notice to the Raymond James Defendants, or scheduled their indemnity rights, but did not,"[8] citing *In re Placid Oil Co.*, 753 F.3d 151, 154 (5th Cir. 2014) for the proposition that "[a] debtor must provide actual notice to all 'known creditors' in order to discharge their claims. Known creditors include both claimants actually known to the debtor and those whose identities are 'reasonably ascertainable.'" *Placid Oil*, in this Court's reading, does not support the Defendants' position not only because it is factually distinguishable, but also because the policy rationale is not present in this case.

In *Placid Oil*, the plaintiff had worked from 1966 to 1995 for the debtor, Placid Oil Company, and he asserted post-confirmation tort claims against the debtor for the allegedly asbestos-related illness and death of his wife. As the Fifth Circuit noted, the debtor had general knowledge of the hazards of asbestos exposure and, more particularly, of the plaintiff's exposure to asbestos over the course of his employment, years before it filed for bankruptcy in 1986, but it had no knowledge of any specific problems suffered by any individual employee, and at the time of the bankruptcy it had neither been cast in judgment nor settled any of the post-confirmation asbestos-related suits against it. The bankruptcy court set a claims bar date of January 31, 1987, and the debtor advertised the notice three times in a national newspaper, but it did not list as creditors its employees who had been exposed to asbestos, such as the plaintiff.

The plaintiff was generally aware of the bankruptcy but had no knowledge of a potential claim at that time, and he would not discover the potential claim until 2003, when his wife became sick and passed away due to asbestos-related mesothelioma. The claim eventually ended up in bankruptcy court, which held that the plaintiff was an "unknown creditor" for whom only constructive notice of the bar date was sufficient to satisfy due process. The plaintiff appealed, arguing that he was a known creditor based on his exposure to asbestos and the debtor's knowledge of the

---

[8] *Id.* at p. 10.

risks of exposure, and that he therefore should have received specific notice. The Fifth Circuit's analysis began with § 523(a)(3):

> Section 523(a)(3)(A) of the Bankruptcy Code provides that a creditor's claim may be discharged upon the bankruptcy plan's confirmation if the "creditor had notice or actual knowledge of the case in time for . . . timely filing." 11 U.S.C. § 523(a)(3)(A); *see also In re Kendavis Holding Co.*, 249 F.3d 383, 385–86 (5th Cir. 2001). Due process requires that notice be "reasonably calculated, under all the circumstances, to inform interested parties of the pendency" of a proceeding. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865 (1950).
>
> The level of notice required by the Due Process Clause depends on whether a creditor is "known" or "unknown." A debtor must provide actual notice to all "known creditors" in order to discharge their claims. *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 295–97, 73 S. Ct. 299, 97 L. Ed. 333 (1953). Known creditors include both claimants actually known to the debtor and those whose identities are "reasonably ascertainable." *Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 489–490, 108 S. Ct. 1340, 99 L. Ed. 2d 565 (1988). A claimant is "reasonably ascertainable" if he can be discovered through "reasonably diligent efforts." *Id.* at 490, 108 S. Ct. 1340 (citation omitted). "[I]n order for a claim to be reasonably ascertainable, the debtor must have in his possession, at the very least, some specific information that reasonably suggests both the claim for which the debtor may be liable and the entity to whom he would be liable." *In re Crystal Oil*, 158 F.3d 291, 297 (5th Cir. 1998). By contrast, the debtor need only provide "unknown creditors" with constructive notice by publication. *Id.* at 295, 298. Publication in a national newspaper such as the Wall Street Journal is sufficient. *Id.* at 295, 297–98.

*Placid Oil Co.*, 753 F.3d at 154–55 (footnote omitted). The court's focus in *Placid Oil* was not on whether a claimant who knew he had a claim received actual notice of the bankruptcy case, but rather on whether the *debtor* knew about the existence of the claim. That is because the plaintiff in *Placid Oil* had no knowledge of his own claim

12

at the time of the bankruptcy, so it would make no sense to talk about whether the plaintiff had actual notice of the bankruptcy timely enough to file a claim.

In *Placid Oil*, the focus was on the debtor's knowledge because if the claim was unknown to the debtor, then the publication of the notice of the claims bar date in a national newspaper would be sufficient constructive notice to discharge the claim. If the claim was known to the debtor, however, then it would have had to provide actual notice to the plaintiff, e.g., by scheduling him as a creditor. The Court concluded that the claims were unknown to the debtor because although the debtor knew of elevated risks, it could not "have reasonably ascertained that some of its hundreds of employees (not to mention former employees) had actual asbestos-related injuries," and "[p]arties with merely foreseeable claims are not 'known' creditors." *Id.* at 157.

*Placid Oil* is factually inapposite to this case because the Defendants' pre-petition indemnity claims were known at the time of the bankruptcy. The Defendants argue that they "could not have predicted that certain bondholders would assign their claims to the Liquidating Trustee in the Main Case" and that the Liquidating Trustee would then assert those claims against the Defendants,[9] which seems to suggest that the claims were unknown. That is incorrect. Their indemnity claims did not spring into existence only when the Bondholders assigned their own claims to the Liquidating Trustee. They arose pre-petition, and any reasonable party—and certainly sophisticated parties like the Defendants—should have acted to protect its claims once the Debtors filed for bankruptcy.[10]

---

[9] *See* Defendants' Combined Memorandum, p. 11 (ECF #46).

[10] *See Riverwood Int'l Corp. v. Olin Corp (In re Manville Forest Products Corp.)*, 225 B.R. 862 (Bankr. S.D.N.Y. 1998), *affirmed*, 209 F.3d 125 (2d Cir. 2000) (finding that indemnity claims arising post-petition but based on a pre-petition contractual indemnity agreement were pre-petition claims that were discharged because the creditor, with knowledge of the bankruptcy, had failed to file a proof of claim; the court rejected the argument that the contingent nature of the indemnity claim excused the creditor from filing a proof of claim); *AMPAM Power Plumbing, L.P. v. Capstone Bldg. Corp. (In re AMPAM Power Plumbing, L.P.)*, 520 B.R. 553 (Bankr. W.D. Tex. 2014) (reasoning, with respect to a plumbing services contract, that "[a] claim arising from such a pre-confirmation, non-executory contract is similar to any other pre-petition claim and would be discharged by confirmation of the Chapter 11 plan. *Manville Forest Products Corp.*, 225 B.R. at 865. . . . Therefore, [the creditor's] claims arose at the point in time at which [the Debtor's] wrongful conduct forming the basis for liability in the State Court Suit occurred." The creditor, who had actual notice of the bankruptcy, had failed to file a proof of claim, and the bankruptcy court held that its claim was discharged. The Court concluded

13

The Court finds that this situation falls squarely under § 523(a)(3) and the Fifth Circuit's long-standing case law, such as *Christopher*. Because the Debtors failed to list or schedule the Defendants' claims, ordinarily they would be exempted from discharge, but because it is undisputed that the Defendants had "actual knowledge of the case in time for such timely filing" of a proof of claim, their claims are dischargeable under the plain language of the statute. The Defendants cite two other cases from outside the Fifth Circuit, *In re Maya Constr. Co.*, 78 F.3d 1395 (9th Cir. 1996), and *Acevedo v. Van Dorn Plastic Mach. Co.*, 68 B.R. 495 (Bankr. E.D.N.Y. 1986). These cases are not binding on this Court, and to the extent they differ from Fifth Circuit law and the plain language of § 523(a)(3), the Court declines to follow them.

In short, the Court finds that because the Defendants had actual knowledge of the bankruptcy proceeding and either knew or should have known about the existence of the pre-petition indemnity claims, their claims were dischargeable in bankruptcy, i.e., they were and are subject to treatment under the Plan and Confirmation Order. The Debtors' failure to schedule their claims or list them as creditors is not dispositive, as § 523(a)(3) begins with the premise that unscheduled claims are subject to discharge *unless* the creditor in question has actual timely notice. The Defendants certainly had actual knowledge of the bankruptcy case with ample time to protect their rights, given that they knew about the case from the outset and admittedly monitored the docket throughout the proceedings. Under the plain language of the statute, their claims are therefore dischargeable.

### *The Defendants are not entitled to relief from the Confirmation Order under Rule 60(b).*

Perhaps anticipating the Court's conclusion that the Plan and Confirmation Order discharge their claims, the Defendants argue that they are entitled to relief

---

that "despite the latency in manifestation of any injury," the creditor's due process rights were not violated because it had actual notice of the bankruptcy.)

14

from the Confirmation Order under Fed. R. Civ. P. 60(b). They concede that application of Rule 60(b) is discretionary.[11] Rule 60(b) provides:

> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
>> (1) mistake, inadvertence, surprise, or excusable neglect;
>>
>> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>>
>> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>>
>> (4) the judgment is void;
>>
>> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>>
>> (6) any other reason that justifies relief.

*Id.*

The Defendants argue that they are not barred from seeking this relief under 11 U.S.C. § 1127(b),[12] which provides, in relevant part: "The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title . . . ." They cite only one case in support of this position, *In re Midlands Util., Inc.*, 251 B.R. 296, 300 (Bankr. D.S.C. 2000) ("The Court finds that while § 1127 does not specifically provide for modification after substantial

---

[11] *See* Defendants' Combined Memorandum, p. 16 (ECF #46) (citing 11 Fed. Prac. & Proc. Civ. § 2857 (3d ed.); *In re 401 E. 89th St. Owners, Inc.*, 223 B.R. 75, 82 (Bankr. S.D.N.Y. 1998)).

[12] *See* Defendants' Combined Memorandum, p. 16 (ECF #46).

consummation, nothing in § 1127 expressly prohibits a party from seeking relief from an order of confirmation pursuant to Fed. R. Civ. P. 60, as made applicable by Fed. R. Bankr. P. 9024.").

The Liquidating Trustee argues that § 1127 bars the Defendants from seeking relief under Rule 60(b) because the Plan has been substantially consummated, citing two cases that have specifically rejected the *Midlands* holding, *In re Rickel & Assoc., Inc.*, 260 B.R. 673, 677 (Bankr. S.D.N.Y. 2001) (rejecting *Midlands* on the grounds that contrary authority existed and that "it was equally true that no court has ever relied on rule 60(b) to modify a plan after substantial consummation"), and *Drye v. Commonwealth of Penn. (In re Drye)*, 2010 WL 1657147 (Bankr. W.D. Penn. 2010) (rejecting *Midlands* on the ground that the reasoning was "contrary to the principle that the Federal Rules of Bankruptcy Procedure cannot provide the debtor with a remedy foreclosed by the Bankruptcy Code").[13]

Based on the Court's own study of § 1127's plain language and the fact that the right to seek a remedy under procedural rules does not trump statutory law, as well as the authorities cited by the Liquidating Trustee, the Court believes that the Defendants are likely barred from seeking relief under Rule 60(b). Even assuming the Defendants could seek relief under Rule 60(b), however, the Court would not exercise its discretion to grant it here because the Defendants were fully aware of the bankruptcy case but failed to participate.

The only asserted basis for modifying the Confirmation Order is that, as noted above, they claim they could not have anticipated that the Liquidating Trustee would obtain assignments of the Bondholders' claims against them. As the Court already explained above, the existence of their pre-petition indemnity claims did not depend on which party held the Bondholders' claim, and the Defendants should have known at the time of the bankruptcy that the Bondholders may pursue a cause of action against them. Should the Defendants have wished to have a say in the bankruptcy case and potentially preserve their pre-petition claims, they should have participated

---

[13] *See* Plaintiffs' Memorandum in Opposition to Defendants' Motions, pp. 19-20 (ECF #49).

16

in the bankruptcy proceeding. They failed to do so and thus had no say in the contents of the Plan or Confirmation Order. Years later, with the Plan substantially consummated, the Court will not roll back the clock and give the Defendants the opportunity to make a different decision. The Court will deny the Defendants' Motion for Relief under Rule 60(b).

### *The claims the Defendants assert here are discharged by the plain language of the Plan.*

Having concluded that the Defendants' claims are subject to the Plan and Confirmation Order and that they are not entitled to modification of the Confirmation Order under Rule 60(b), the Court turns to the next, and potentially dispositive, question, whether the Plan and Confirmation Order in fact discharges the Defendants' claims. The Court concludes that they do. As noted above, § 9.21 of the confirmed Plan contains the following provision:

> **Except as otherwise provided in the Plan and Confirmation Order, and in addition to the injunction provided under sections 524(a) and 1141 of the Bankruptcy Code on and after the Effective Date, all persons who have held, currently hold or may hold a debt, Claim or Interest are permanently enjoined from taking any of the following actions on account of any such discharge of debt or Claim: (1) commencing or continuing in any manner any action or other proceeding against the Debtors, the Reorganized Debtors, their successors, heirs, executors, administrators, or assigns or their respective properties . . . (4) asserting any setoff, right of subrogation, surcharge, or recoupment of any kind against any obligation due the Debtors, the Reorganized Debtors, the Purchaser, their successors, heirs, executors, administrators, or assigns or their respective properties. . . Any person injured by any willful violation of such injunction may recover actual damages, including costs and attorneys' fees and, in appropriate circumstances, may recover punitive damages from the willful violator.**

*See* Plan (ECF #755-1 in the main bankruptcy case) (emphasis in original). The Confirmation Order contains similar language. *See* Confirmation Order, ¶ 26 (ECF #755). These are precisely the types of claims that the Defendants are asserting here, and they were discharged and enjoined from assertion by the plain language of the Plan.

The Defendants have not cited a single case where a claimant was allowed to assert a claim of setoff, recoupment, indemnity, or similar theory when the confirmed plan expressly discharged such claims. That is why the Defendants argue so forcefully that they should not be bound by the confirmed Plan and Confirmation Order at all, or that the Confirmation Order should be modified under Rule 60(b). At any rate, the Liquidating Trustee cites multiple cases in which a court barred the assertion of claims that were specifically discharged in the Plan and Confirmation Order. In *Daewoo Intern. Daewoo Int'l (Am.) Corp. Creditor Tr. v. SSTS Am. Corp.*, No. 02 CIV. 9629 (NRB), 2003 WL 21355214 (S.D.N.Y. June 11, 2003), for example, the district court explained:

> Finally, SSTS argues that its right to assert the defense of recoupment is not affected in any way by the confirmed plan's express prohibition against "the assertion of any right of setoff, subrogation or recoupment of any kind against any obligation due from [the debtor or trust]. . . ." Confirmation Order ¶ 17 (emphasis added). We disagree. Although recoupment is not a "claim" within the meaning of the Bankruptcy Code and this right is, as a general matter, unaffected by the debtor's discharge, *see In re Harmon*, 188 B.R. 421, 425 (B.A.P. 9th Cir. 1995), in this case, **because SSTS was provided with sufficient notice to object to the plan's prohibition on recoupment and because it did not do so in a timely fashion before the Bankruptcy Court, we will not allow it to do so now**. *Cf. In re Chappell*, 984 F.2d 775, 782 (7th Cir. 1993) ("A confirmed Chapter 13 plan is binding on all creditors provided for within the plan. . . . Creditors must object to confirmation, appear at hearings or otherwise put disputes before the bankruptcy court in order to raise objections. If the creditor fails to do so, the creditor is bound by the Chapter 13 plan."). Accordingly, we dismiss SSTS's recoupment claim.

18

*Id.* at *5 (emphasis added).

Similarly, in *In re Lykes Bros. S.S. Co., Inc.*, 217 B.R. 304 (Bankr. M.D. Fla. 1997), the plan contained a provision "enjoin[ing] any creditor from 'asserting a setoff, . . . of any kind against any debt, . . . due to the Debtor, the Reorganized Debtor, the reorganization trusts, any of the Canadian Pacific entities or their respective properties, including the acquired assets, the vessels, and the excluded assets.'" *Id.* at 309. The United States of America later tried to assert a defense of setoff which would seem to be expressly barred by that plan provision, arguing that its setoff claim was preserved under § 553 of the Bankruptcy Code. The court explained:

> Section 553 provides, in relevant part, "except as otherwise provided . . . , this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor." 11 U.S.C. § 553(a). Section 1141(a) provides in pertinent part, "except as otherwise provided . . . , the provisions of a confirmed plan bind . . . any creditor . . . , whether or not the claim or interest of such creditor . . . is impaired under the plan." 11 U.S.C. § 1141(a). A fair reading of these two Code Sections leaves no doubt that facially they are in conflict and require a consideration of which of the two shall prevail over the other. The difficulty lies in the two competing policies of "(1) not requiring a creditor to disgorge an asset in its possession belonging to a debtor who still owes it money, and (2) facilitating a reorganization found to be in the interest of all creditors by mandating such a disgorgement ." *United States v. Driggs*, 185 B.R. 214 (D. Md. 1995) Under the facts of this case, especially in light of the CCC's failure to assert its setoff claim until after confirmation, this Court concludes that facilitating the reorganization process is the overriding policy in this case and that, therefore, the provisions of Section 1141 take precedence over Section 553. Having reached this conclusion, it is appropriate to consider whether Government's setoff claim is barred by the doctrine of *res judicata*.

*Id.* at 310. The court concluded that the claim was barred by *res judicata*, explaining that the plan and confirmation order were binding on the government because it "did not object to confirmation and did not appeal the April 15, 1997 Confirmation Order. This Court is satisfied that the Government is bound by the terms of the confirmed

Plan." *Id*. Thus, although § 553 by default preserves setoff rights,[14] they are not preserved if a confirmed plan expressly discharges them. *See also In re SunCruz Casinos LLC*, 342 B.R. 370 (Bankr. S.D. Fla. 2006), in which the Court held:

> This Court does not need to decide whether the effect of confirmation under § 1141 includes the extinguishment of setoff or recoupment rights if the chapter 11 plan is silent on the subject. **Where, as here, however, the Plan expressly prohibits the assertion of any setoff or recoupment rights, the Court finds that such a provision is binding on creditors and parties in interest to the case, including the Club**.

*Id*. at 381 (emphasis added).

In this case, the confirmed Plan discharges and enjoins the assertion of precisely the types of claims the Defendants are now asserting, and the Court must conclude that they are in fact discharged and enjoined because the Court has already concluded that the confirmed Plan and Confirmation Order are binding on the Defendants and that they are not entitled to modify the Confirmation Order under Rule 60(b).

### *The Defendants may not assert their claims defensively.*

The Defendants argue that even if the Plan binds them and discharges and enjoins their claims, the Plan cannot bar them from asserting their rights of setoff and recoupment defensively, i.e., in response to the claims assigned by the Bondholders and asserted by the Liquidating Trustee. In support, the Defendants cite *In re Reagor-Dykes Motors LP*, 2021 WL 3918869 (Bankr. N.D. Tex. Sept. 1, 2021), in which the bankruptcy court allowed a creditor to assert setoff and recoupment claims defensively against claims that had emanated from the debtor, even though the creditor had failed to file a proof of claim. As that court explained, the Fifth Circuit has not ruled on whether the failure to file a proof of claim precludes

---

[14] For example, in *In re BOUSA Inc.*, No. 89-B-13380 JMP, 2006 WL 2864964 (Bankr. S.D.N.Y. Sept. 29, 2006), cited by the Liquidating Trustee, the court concluded that a creditor's failure to object to a plan did not constitute a waiver of setoff rights because the plan in question did not expressly discharge setoff rights, which were by default preserved by § 553 of the Bankruptcy Code.

a creditor from asserting their claims defensively, but a majority of lower courts allow it.[15] The Court has examined the reasoning of *Reagor-Dykes* and the cases cited therein and finds that the Defendants remain barred from asserting their claims even in a defensive posture in this case.

The *Reagor-Dykes* court surveyed opinions by Texas bankruptcy courts that allowed a creditor to assert the rights of setoff and recoupment defensively regardless of whether the creditor filed a proof of claim. Significantly, none of the cases cited by the court involves a confirmed plan with language specifically barring the assertion of setoff and recoupment claims, and at least one specifically allowed it. Most pertinent to this case, footnote 7 of the opinion suggests that the right to assert setoff and recoupment defensively is tied to § 553 of the Code which, as explained above, is the Code provision that generally preserves setoff claims:

> Several courts have noted that if a proof of claim is filed, and that claim is disallowed, then the creditor is not able to assert setoff **under 11 U.S.C. § 553**. *In re ABCO Indus., Inc.*, 270 B.R. at 63 ("Although, as noted, the defensive use of setoff (or recoupment) is not necessarily precluded by the failure to file a proof of claim, when a proof of claim is actually filed and eventually disallowed, **§ 553(a)(1) is clear that setoff is not to be permitted**."); *In re Northstar Offshore Grp., LLC*, 2018 WL 4445082, at *3.

*Id.* at *3 n.7 (emphasis added). One of the cases cited by the *Reagor-Dykes* court, *Gilmour v. Aetna Health, Inc.*, No. 17-cv-00510, 2018 WL 4937072 (W.D. Tex. Oct. 11, 2018), *report and recommendation adopted*, 2018 WL 10374126 (W.D. Tex. Dec. 11, 2018), makes the link to § 553 even more explicit:

> A setoff or an offset is defined as "[a] defendant's counterdemand against a plaintiff, arising out of a transaction independent of the plaintiff's claim" or "[a] debtor's right to reduce the amount of a debt by any sum the creditor owes the debtor." BLACK'S LAW DICTIONARY 1404 (8th Ed. 2004) (emphasis added). The right to a setoff is not to be confused with a right of recoupment, which is the "[r]eduction of a plaintiff's damages because of a

---

[15] *Id.* at * 2.

demand by the defendant arising out of the same transaction." *Id.* at 1302.

> The Fifth Circuit has recognized the "apparent inconsistency between § 524(a)(2)'s prohibition on offsets and § 553's recognition of setoff rights" and yet has held that "a debtor's discharge in bankruptcy does not bar a creditor from asserting its right to setoff." *In re Luongo*, 259 F.3d 323, 333 (5th Cir. 2001). In doing so, the Fifth Circuit has reasoned that where the use of Section 553 is defensive, the spirit of Section 524(a)(2)'s prohibition on debt collection efforts by a creditor is not violated. *Id.* at 333–34. This interpretation "preserv[es] the creditor's right to raise a discharged debt as a defense to a recovery action brought by a debtor" while "preventing affirmative action [by the creditor] to collect the discharged debt." *Id.* at 333. The Plan confirmed by the Bankruptcy Court itself embraces this principle in its provision addressing the preservation of setoff rights by stating that "[n]either this provision nor the injunctive provision of the Confirmation Order shall impair the existence of any right of setoff or recoupment that may be held by a Creditor herein . . . ." (Plan [#5-2] at 22.) Based on these principles, neither the discharge of Victory's debt in bankruptcy nor the injunctive provision of the Confirmation Order is a bar to Aetna's assertion of its right to setoff.

*Id.* at *4.

In this case, unlike in *Reagor-Dykes*, *Gilmour*, and the other cases cited, the Plan contains language that does not just discharge the claims of indemnity, setoff, and recoupment but permanently enjoins creditors from asserting them in the future. As the Court already explained above, case law holds that this type of explicit bar has the effect of negating § 553, precluding the right of setoff from surviving substantial consummation of the Plan. Because *Reagor-Dykes* and the cases cited therein generally look to § 553 for the source of the defensive right to assert setoff and recoupment and because the confirmed Plan negates § 553, the Court believes the Defendants cannot assert those rights even in a defensive posture in this case.

Even if the confirmed Plan did not nullify § 553, the Defendants still could not assert the rights of setoff and recoupment in a defensive posture here because it could

only assert them against the Debtor.[16] Here, the claims at issue are not the Debtor's but rather the Bondholders', and they are not being asserted by the Debtor but rather by the Liquidating Trustee. To get around this obvious impediment to their use of the setoff/recoupment defenses, the Defendants claim that "the Liquidating Trustee stands in the shoes of the Debtors," and as a result, when the Liquidating Trustee acquired the Bondholders' claims, they became claims of the Debtors and their bankruptcy estates by virtue of being pooled with the claims of the Debtors' estate, which the Trust had acquired under the terms of the establishing documents.[17] The Court rejects this argument based on the plain language of the establishing documents and relevant Fifth Circuit jurisprudence.

With respect to the establishing documents, the Confirmation Order specifies that "[t]he Liquidating Trust shall have a separate existence from the Debtors,"[18] and the Liquidating Trust Agreement provides that the "Trust shall not be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Plan."[19] The Liquidation Trust was "established for the purpose of liquidating the Trust Assets and taking all actions necessary to wind down and close the Estate," and the Liquidating Trust Agreement only transfers assets and rights from the Debtors to the Liquidating Trust, not debts.[20] Additionally, relevant Fifth Circuit jurisprudence "recognizes that the debtor, debtor in possession, and the post-confirmation entity are all separate entities." *Segner v. Admiral Insurance Co. (In re Palmaz Scientific, Inc.)*, 2018 WL 3343597, at *11 (Bankr. W.D. Tex. 2018), citing *Dynasty Oil & Gas, LLC v. Citizens Bank, et al (In re United Operating, LLC)*, 540 F.3d 351, 355-56 (5th Cir. 2008). Given this Fifth Circuit jurisprudence, the Court declines to follow the cases from other circuits cited by the Defendants.[21]

---

[16] *See Gilmour*, *supra*, which summarizes the law of setoff and recoupment.

[17] ECF #43, p. 15.

[18] Confirmation Order, § III(B) ¶ 12 (ECF #755-1 in the main bankruptcy case).

[19] Liquidating Trust Agreement, § 1.2 (ECF #730-1 in the main bankruptcy case).

[20] *Id.* at §§ 1.2, 1.3, *et seq.*

[21] Those cases include *Indian Harbor Ins. Co. v. Zucker for Liquidation Tr. of Capital Bancorp, Ltd.*, 860 F.3d 373 (6th Cir. 2017), *Newberry Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392 (9th Cir.

23

The Court therefore concludes that the Liquidating Trustee is not the successor-in-interest to the Debtors. The Liquidating Trustee is not even asserting claims of the Debtors, but the Bondholders' assigned claims. Because the Defendants could only assert their claims defensively against the Debtors, and this case involves neither the Debtors nor the Debtors' claims, the Defendants would be barred from raising their setoff and recoupment claims defensively in this case even if the language of the confirmed Plan did not discharge and enjoin the assertion of those claims.

## Conclusion

For the reasons set forth in this opinion, the Court will grant the Liquidating Trustee's Motion for Summary Judgment (ECF #26) and deny the Defendants' Motion for Summary Judgment (ECF #44) and Motion for Relief from Confirmation Order (ECF #45), entering judgment in favor of the Liquidating Trustee on all issues. Counsel for the Liquidating Trustee shall submit a proposed Judgment in conformity with this Ruling within ten (10) days.

As a final note, the Court's decision today only determines that the Defendants may not assert the discharged claims arising from the indemnity agreement against the Liquidating Trustee; it does not decide the merits of the claims against the Defendants or any of the Defendants' other defenses or claims. Despite the Defendants' argument that the discharge of these claims somehow represents a windfall to the Liquidating Trustee based on the assignment of the Bondholders' claims to him, that is simply not the case. The assignment of the bondholder claims to the Liquidating Trustee had no effect on the viability of the Defendants' claims or defenses arising out of the indemnity obligation because they were already discharged and enjoined in the Plan and Confirmation Order for the reasons set out above. Had the Bondholders never assigned their claims to the Liquidating Trustee

---

1996), and *In re Consol. Pioneer Mortg. Entities*, 248 B.R. 368 (B.A.P. 9th Cir. 2000), *aff'd*, 264 F.3d 803 (9th Cir. 2001).

and instead asserted them directly against the Defendants, the Defendants would be in precisely the same situation they are now in.

###